C. N. McADOO v. D. W. C. BENBOW, Administrator, &c..

The Act of March 16, 1869, "Suspending the Code of Civil Procedure
in certain cases," is not unconstitutional, in requiring writs in civil
cases to be "returned to *the regular term* of the Superior Court," &c.,.
instead of, the Clerk's office, as heretofore.

The phrase "Superior Court" in Art. 4, Sec. 28, of the State Consti-
tution, does not mean the Court of the Clerk.

RODMAN, J., dissenting.

MOTION to dismiss a writ of Summons, heard before *Tourgee*,
J., at the Superior Court of GUILFORD, at Chambers, on the
1st day of July, 1869.

The plaintiff, on the 14th day of June 1869, had issued a writ
of Summons, asking "for a judgment according to the prayer of
the complaint," returnable at the office of the Clerk, &c. Upon
the 18th of June 1869, a motion to that effect having been
made by the defendant, the Clerk dismissed the Summons, on
the ground that it should have been made returnable to the
regulor term, &c.

Upon an appeal to the Judge of the Superior Court for the

30

7th Judicial District, His Honor reversed the Clerk's judgment, upon the ground "That the Act of Assembly requiring the Summons in all cases to be made returnable only to the regular term of the Superior Court is in direct conflict with Art. IV, Sec. 28, of the Constitution of this State. The making up of issues is certainly part of the "business" for the transaction of which the Courts are "at all times open." The provision making the Summons returnable only at term would close the Courts for this "business" for *eleven months* in each year.".

Thereupon the defendant appealed to this Court.

*Battle & Sons*, for the appellant.
*Phillips & Merrimon, contra.*

PEARSON, C. J. His Honor decides that the statute entitled, "An act suspending the Code of Civil Procedure in certain cases," is unconstitutional in respect to the enactment: "Writs of summons shall be returnable to the regular terms of the Superior Courts," because, as he claims, it violates Art. IV, Sec. 28, of the Constitution.

No Court should declare a statute to be void, except in a clear case, for it is supported by the presumption of intelligence in the legislative branch of the government.

The Court is of opinion that, in the particular now under consideration, this statute does not violate the Constitution, and that his Honor erred in holding that the General Assembly has not power to repeal, suspend, modify or change, the Code of Civil Procedure, in respect to the judicial functions conferred by it upon the Clerks of the Superior Courts, other than those conferred by the Constitution itself.

The question is, does the Constitution divide the Superior Court so as to confer certain of its functions upon the Judge proper, and certain other of its functions upon the Clerk, as Judge subordinate: among others, "jurisdiction to hear and decide on all questions of practice and procedure, arising in actions brought to this Court;" and "on all other matters,

whereof jurisdiction is hereby given to the Superior Court, unless the Judge of said Court, or the Court at the regular term thereof, be expressly referred to." C. C. P. Sec. 108.

Is this so ordained by the Constitution ? There is no express provision to that effect. So we come to the point: Is this power conferred on the Clerk by the Constitution, or only by the Code?

It is claimed that Art. IV, Sec. 28, of the Constitution, confers these judicial functions on the Clerk. The section is in these words: "The Superior Courts shall be, at all times, open for the transaction of all business within their jurisdiction, except the trial of issues of fact requiring a jury." By itself, the section confers no jurisdiction on any one to act as a Judge, either expressly or by implication. It may as well point to the Sheriff or any one else, as to the Clerk, and only by taking it in connection with Sec. 12, can there be any ground whatever, for any implication. Sec. 12 divides the State into twelve Judicial Districts, for each of which a Judge shall be chosen, who shall hold a Superior Court in each County of said District, at least twice a year, to continue for two weeks, unless," &c. These Dictricts, severally, comprise some seven or eight Counties. The argument is in this wise: Sec. 12 requires the Judges to hold a Superior Court, to continue for two weeks, in each County twice every year: By Sec. 28, "the Superior Court shall be, at all times, open for the transaction of all business," &c: This is impossible if the Judge is to hold the Courts, for he is required to be absent holding Courts in other Counties nearly half of the year: *Ergo*, the Constitution confers on the Clerk of the Superior Court judicial functions, to be exercised in place of the Judge !

*Non sequitur* ! It only follows that Sec. 28 cannot be construed literally. It seems to be a provision taken from the Constitution of a Stat e which appoints a Judge of the Superior Court for *every County*. There it may work well enough. But it must be trimmed down in some way, in order to make it fit in a Constitution which appoints only one Judge of a Superior Court, for Districts of seven or eight Counties. One way is to construe it to mean that the Superior Courts shall

be at all times open for the transaction of such business as can be done in the absence of the Judges, for instance, issuing writs of summons, taking undertaking for appeals, special·proceedings for arrests, injunctions, &c., and taking probate of deeds, granting letters testamentary, letters of administration, appointing guardians, &c., where the Clerk acts as Surrogate. Allow that this does not fully satisfy the words of Sec. 28, the question again comes up, what is there in the *Constitution* to confer the judicial functions under consideration upon the Clerks? And that, too, in face of the express enumeration of the judicial functions conferred on them, and set out in Sec. 17. (*Expressio unius exclusio alterius !*)

Sec. 17 is in these words: "The Clerks of the Superior Courts shall have jurisdiction of the probate of deeds, the granting of letters testamentary, and of administration," &c., "and *of such other matters as shall be prescribed by law.*"

This enumeration of the subjects of jurisdiction divides the Superior Court only to the extent of conferring on the Clerk subordinate jurisdiction in respect to certain matters, which had been before exercised by the County Court, and most of which, in other States, is exercised by the Surrogate Court, and in England by the Court of the Ordinary. If it was intended to make a further division of the functions of the Superior Courts in the Constitution, by conferring on the Clerks jurisdiction to hear and decide on all questions of practice and procedure arising in actions brought to said Courts, why was not that set out in the Constitution, like the jurisdiction to grant letters testamentary and of administration, and the other matters enumerated?

Here it may be remarked, in putting a construction upon an instrument the question for the Court is, not what the draftsman meant, but what the words of the instrument means. It sometimes happens for this reason, that the draftsman is less to be relied on than almost any other person to construe an instrument, whether it be a constitution, statute, deed or will.

All difficulty, however, is removed by this clause in Sec. 17: "The Clerks of the Superior Courts shall have jurisdiction "of

McADOO *v.* BENBOW.

such other matters as shall be prescribed by law." Under this clause the General Assembly had power to enact the Code of Civil Procedure, by which the functions of the Superior Court is, to some extent, divided between the Judge and the Clerk; and under this same clause the General Assembly has power to repeal, suspend, modify or change its enactments, so as to make writs of Summons returnable to the regular terms of the Superior Courts.

In this view, the next clause of Sec. 17, "All issues of fact joined *before them* shall be transferred to the Superior Courts for trial," harmonizes; and everything is made to fit. "Issues of fact joined before them:" Whom? The Clerks of the Superior Courts, whether exercising the jurisdiction conferred on them by the Constitution as Probate Judges, or the jurisdiction which may be conferred on them by the General Assembly in its wisdom, under the words, "all such other matters as shall be prescribed by law." As in this particular, the Code of Civil Procedure is a creature of the General Assembly, the Court cannot allow it to be greater than its maker.

RODMAN, J., *dissentiente.* On the 14th of June, 1869, the plaintiff caused to be issued by the Clerk of the Superior Court of Guilford County, a summons to the defendant to appear at the office of the said Clerk within twenty days after its service, to answer the complaint of the plaintiff filed therein, &c. The defendant appeared by his attorney in due time, and moved to dismiss the action, on the ground that the summons was returnable before the Clerk, not in term time, when it should have been before the Clerk in term time. The Clerk dismissed the action, from which the plaintiff appealed to the Judge, who reversed the judgment of the Clerk; and the defendant appealed to this Court.

The summons in this case was issued in conformity to the Code of Civil Procedure, Sec. 73. But by an act entitled, "An act suspending the Code of Civil Procedure in certain cases," ratified March 16th 1869, the Legislature enacts (Sec. 2,) that the summons shall be returnable to the regular term

of the Superior Court of the County where the plaintiffs, or one or more of them, or the defendants, reside," &c. By Sections 4, 5 and 6, the pleadings are to be made during the term, and the issues, whether of fact or law, are to be tried at the next succeeding term of the Court. The other provisions of this act it is unnecessary to notice.

The questions are:

1. Whether the provisions of the Code (§73) requiring summons to be returned before the Clerk, and giving him jurisdiction to decide in the first instance on all questions of practice and procedure, &c, (§ 108) are contrary to the Constitution.

2. Whether the provisions of the Act of Assembly above referred to, in respect to the return of mesne process, and the making up of the pleadings, are contrary to the Constitution.

The importance of these questions can scarcely be overrated, as upon their decision depends the success of the effort made by the Constitutional Convention of the State, to destroy the uncertain and dilatory practice formerly in use, and to restore private credit and a regard for the sanctity of contracts, by giving a speedy remedy.

On the first point: It is contended by the defendant that the Constitution does not sanction the Act of the Legislature in giving to the Clerk the jurisdiction given by sections 73 and 108 of the Code of Civil Procedure, but that such jurisdiction is confined to the Judge of the Court; and that the Code of Civil Procedure in declaring that the Clerk of the Superior Court was to be regarded for the subordinate purposes therein specified as the Court, (§ 9), mistook the meaning of the Constitution.

Art. IV, Sec. 4, of the Constitution, declares in what courts the judicial power of the State shall be vested; it mentions among the courts, Superior Courts, but it does not mention Probate Courts; hence, although there may be courts possessing probate powers, there are no such courts known to the law as Probate Courts. A deduction will be attempted to be drawn from this presently.

Art. IV treats of the Constitution and jurisdiction of Courts of Impeachment and of the Supreme Court: it then comes to the Superior Courts. Section 12 divides the State into twelve judicial districts, for each of which " a Judge shall be chosen, who shall hold a Superior Court in each county in said district at least twice in each year." Section 15 prescribes that " the Superior Courts shall have exclusive original jurisdiction of all civil actions, whereof exclusive original jurisdiction is not given to some other Courts." It will be noted that jurisdiction of probate causes, which are civil actions, is here given to the Superior Courts: the Superior Court is deemed a Probate Court, or else there can be no Probate Court of original jurisdiction at all. Section 16 enacts: " The Superior Courts shall have appellate jurisdiction of all *issues* of law or fact determined by a Probate Judge or a Justice of the Peace, where the matter in controversy exceeds twenty-five dollars; and of matters of law in all cases."

Up to this point it will be seen that the Superior Courts are Probate Courts of original and also of appellate jurisdiction. How is this anomaly reconciled?

Section 17 says: " The Clerks of the Superior Courts shall have jurisdiction of the probate of deeds, the granting of letters testamentary and of administration, &c., and of such other matters as shall be prescribed by law."

Evidently, therefore, the Clerk of the Superior Court is regarded as an essential component part of that Court, and to him, as representing the Court, original jurisdiction over certain matters is given, the appellate jurisdiction over which is given to another component part of the same Court. The phrase in section 17, that the Clerks of the Superior Courts shall have jurisdiction " of such other matters as shall be prescribed by law," it is admitted would ordinarily and apart from their particular connection, give the Legislature the power to confer on the Clerk any jurisdiction not inconsistent with the particular provisions, or the general purview of the Constitution. But in this case it is contended that those

words are limited to a grant of jurisdiction over matters *ejus-dem generis;* that is to say, of a character similar to those above recited, which would confine it to probate matters, and exclude the powers over the returns of process and over the pleadings, given by § 73 and § 108, Code of Civil Procedure. This rule of construction is usually applied to a statute limiting a general right, or imposing penalties for certain offences, or to conveyances or contracts relating to a particular class of subjects. In all these cases it is properly held that general words superadded to those of special description are only intended to embrace matters of the same general character with those previously specified. Dwarris on Statutes 737, 9 Law Library, 69.

But in this case that rule cannot apply. Section 17 and the previous sections have established the Superior Courts as of a complex organization; they are to consist of a Judge who is to hold terms of the Court, and of a Clerk; to the Court, as a whole, jurisdiction has been given over all civil actions, and the object of this clause is not to grant powers, but to distribute among the component parts of the Court the powers previously granted to it as a whole.

That the Court is of this complex character must be clear from a consideration, that jurisdiction of all civil actions is given to it, (§ 15) and this must include probate jurisdiction; for no special Probate Court is provided for in the exhaustive enumeration of the Courts in Sec. 4, and unless this jurisdiction be included in the general grant to the Superior Courts, it cannot exist anywhere. Yet section 17 proceeds to give it to the Clerk of the Superior Court, which upon any other construction than that of a complex Court, would be to establish a new Court, not enumerated in section 4.

As was said by the Counsel for the plaintiff, this complex organization of Courts is not unusual. He cited the instance of the English Court of Chancery and the Master of the Rolls; but a more familiar instance may be found in the powers usually exercised by Masters in every Court of Chancery. The Master is habitually the referee and accountant of

the Court, and in such matters performs its functions subject to review on exception taken.

So under the present Bankrupt Act, the Register is deemed the Court for all orders which are expressly required to be made by the Judge, or at a term of the Court.

From these considerations I conclude, that the words "such other matters as shall be prescribed by law," have in this place their proper, independent and full signification, and that it was competent to the Legislature to give to the Clerks under these words the jurisdiction given by § 73 and § 108 Code Civil Procedure. This view is strengthened by a consideration of the following words in section 17: "All issues of fact *joined* before them (the Clerks), shall be transferred to the Superior Courts for trial, and appeals shall be to the Superior Courts from their judgments in all matters of law." This Court has held in the case of *Heilig* v. *Stokes*, decided at this term, that the phrase "issues of fact joined, &c." has a technical meaning: that it does not mean simply disputed questions of fact, but what are technically known as "issues joined" by the parties to an action, by their pleadings. If this be the proper meaning of the phrase, the inference would seem to be inevitable that the pleadings in all actions must be made up before the Clerk, for in no other way can "*issues of fact be joined*" before him, to be transferred to the Superior Court, or issues of law, to be taken there on appeal. And it deserves to be noticed, that in the clause granting probate jurisdiction, every possible object of that jurisdiction is exhausted—the subsequent clause therefore, requiring issues of fact to be joined before the Clerks, must either be held to confer *additional and different* jurisdiction, or else to be meaningless. This phrase cannot be confined to issues of fact joined in matters of probate; for in such matters no issues are *joined* at all, except by statutory enactment in the case of a contested will. It is only in proceedings at common law, as distinguished from those in the Chancery or Ecclesiastical Courts, that issues are *joined*. In the common law Courts the parties themselves make up the issues by their averments or denials, and finally

come to some single and simple issue which determines the case. In the Chancery and Ecclesiastical Courts, on the contrary, issues are never joined by the parties, but the Court makes up the issues from their contrary averments. The phrase "issues joined" technically understood is confined to proceedings in the course of the common law, and does not include such questions of fact as may occur in the course of probate proceedings: in such proceedings issues may be made up by the Court, but they are never joined by the parties. This consideration compels the conclusion that this clause has no reference to probate jurisdiction.

Moveover, the Constitution (Art. IX, Sec. 28) enacts that "the Superior Courts shall be at all times open for the transaction of all business within their jurisdiction, except the trial of issues of fact requiring a jury." A Judge is elected for a district composed of six or more counties; a Clerk is elected in each county; how can this mandate of the Constitution be complied with, how can the Court be kept open in each county at all times, except by authorizing the Clerk, who, as has been seen, is a component part of the Court, to take jurisdiction in the first instance of all things preliminary to the trial of issues of fact by a jury? The filing of pleas and the joinder of issues upon them, is a matter which must be done in the Court which has jurisdiction of the cause; that is to say, in the Court for the county in which the action is brought; it is a matter over which the Superior Court has jurisdiciion; it must be allowed to be done at all times. This cannot be done except by giving to the Clerk the powers given to him by §§73 and 108 C. C. P.; and when we further see that the issues of fact joined before the Clerk shall be transferred to the Superior Court for trial (Sec. 17,) it seems to me impossible to escape the conclusion that all pleadings must be made before the Clerk, and only before him.

On the second point: The consideration of the first question has nearly exhausted all that can be said upon the second. If the view which I have taken of the fourth Article of the Constitution be correct, its requirements are plainly violated by the Act of March 16th, 1869.

By that act, issues of fact can never be joined before the Clerk; they can never be transferred to the Superior Court for trial; appeals from his judgment in matters of law can never be taken to the Superior Courts, for he can never make any. The Courts, instead of being at all times open for the transaction of all business within their jurisdiction, except trials by jury, are open only four weeks in the year. The Act seems to me to have been intended to subvert the whole judicial reform which the Constitution contemplated, and to restore the former practice which the Constitution condemned and intended to do away with. It seems to me to violate alike the letter and the spirit of the Constitution.

"Statutes which oust delay, and are for expedition of justice, shall be benignly construed, and are extended by equity," Dwarris on Statutes, 728; and on the same principles those which delay justice, cannot be regarded favorably.

For these reasons I am of opinion that the judgment below should be affirmed.

Per Curiam.                     Judgment reversed.