## W. P. MERCER v. FRANK HITCH LUMBER COMPANY.

(Filed 28 February, 1917.)

**1. Appeal and Error—Appellant—Burden of Proof—Admissions.**

Where the controversy is over a disputed account in the settlement with the plaintiff for timber cut by him upon the defendant's land, and the defendant offers to introduce in evidence a memoranda his agent had made of lumber it received, on the appeal of the latter, it is incumbent upon him to show error in the exclusion of this evidence, which does not appear when the plaintiff has admitted the delivery of timber to the extent accounted for on defendant's books and claims he should be paid a further sum for additional lumber cut and delivered under this contract.

**2. Evidence—Memoranda of Transactions.**

Memoranda of entries made as to receipt of lumber under a contract to cut and deliver it, if in strictness it is not a part of the *res gestæ*, can only be admitted as substantive evidence in an action to recover under a contract for payment when the person making them is dead at the time of trial or unavailable as a witness, and he made them in the line of his

duties, or custom, contemporaneously with the act to be proved, and he had knowledge of the relevant facts which they purport to contain; and the evidence in this case, not falling within the rule, was property excluded.

### 3. Accord and Satisfaction—Compromise—Intent—Trials—Evidence—Questions for Jury.

In applying the rule that accepting a check in full for a disputed account will conclude the party, the intent of the party as ascertained by the jury will control when the evidence is conflicting, and more than one inference can be drawn therefrom, as, in this case, where the check did not refer to the particular account or express itself to be in full settlement thereof, and had been refused as such a year or two previous, and then transmitted in the course of dealings between the parties relating to other transactions, and the evidence was conflicting as to whether a statement to that effect had been sent or received with the check, or whether the debtor had indorsed the check supposing it was in the general course of settlement for other matters.

CIVIL ACTION, tried before *Allen, J.,* and a jury, at November Term, 1916, of EDGECOMBE.

The action was to recover a balance claimed to be due on a sale of timber, which defendant contended had been fully paid for.

On the trial there was evidence of the part of plaintiff tending to show, among other things, that in May, 1909, he sold to defendant the timber to be cut from a tract of land in said county, containing 75 to 100 acres; that the timber in question was very large, long-straw pine and was to be paid for at $3 per thousand, and the amount of timber had been estimated by witness at 500,000 feet; that the timber was cut and hauled off the land by defendant, and thereafter defendant sent plaintiff a statement showing the amount at 212,500 feet; that plaintiff knew that there was a mistake, and had same carefully measured on the stump, getting the number of cuts to the log plainly marked by sawdust as each stock was sawed, and the amount was 430,000 feet, and, for the difference, plaintiff had never been paid. The persons employed by plaintiff to take these measurements testified as to the amount and to the care with which same had been ascertained. A witness by the name of Dupree, whom defendant alleged they had employed to measure the timber as it was taken off the ground, stated that this was not done as to all the timber cut; that he knew of 2½ trains of 40 cars each, 1,800 to 2,000 feet per car; that he had supposed another man was measuring it, but, after that time, he measured the timber and sent statements to each of the parties.

It appeared, also, that plaintiff had sold defendant timber off of several other tracts of land in the county, about which there seems to have been no dispute, the issue between them being as to this tract of 100 acres adjoining H. T. Hinton *et al.*

A witness, Frank Hitch, testifying for defendant company, said, among other things, that he did not have personal knowledge of the timber or the measurements; that the company had employed a man named Dupree to measure the timber as it was sent to the Atlantic Coast Line Railway station, and they had also the record of measurements of the timber at the defendant's mill where it was unloaded by the railroad company. These were made by a man named Howard, who was dead at the time of the trial; that the books showed the amount of timber in dispute to be 212,558 feet at $3 per thousand. The witness further testified that he had a statement made out by his bookkeeper, showing the account between plaintiff and the company, covering different transactions from 1904 down to and including this deal, and showing a balance due from defendant company on account of $35.75; that part of this statement had been furnished by the witness Dupree; that in February, 1910, when plaintiff was in Norfolk, witness had showed him the statement, putting the amount from this disputed item at 212,559 feet, and plaintiff objected to the amount as insufficient, and witness then offered him a check for the balance, as shown, which he declined to take; that witness took the check back to the office and put it in the safe, and, a year or so after, when they had some transaction about timber in another section of the county and in settling, the witness inclosed him this check and called attention to it as being the check made out to him last year. This came back through the bank as paid. The statement of account did not accompany this check when it was sent, and was just the check for the amount of $35.75.

The plaintiff in his testimony denied that any such account was ever shown him or that any claim was made that the $35.75 was or purported to be any settlement for an alleged balance; that witness received the check in the mail with some other checks for timber, but no statement of what it was for and no attention was called to it; that witness supposed it was a check payable on account, and so indorsed it; that he had sold defendant several other tracts of timber after the timber in dispute was cut; that, witness, in indorsing the check, did not intend or agree to take same in full.

On this, the evidence chiefly relevant, offered by the parties, the cause was submitted to the jury, who rendered a verdict for plaintiff.

Judgment on the verdict, and defendant appealed, assigning errors.

*F. S. Spruill and W. O. Howard for plaintiff.*
*John L. Bridgers for defendant.*

HOKE, J. Objection is made to the validity of the trial for that the court excluded the written memoranda of Howard, deceased, purport-

ing to be a measurement of logs hauled from the land in controversy and left at defendant's mill by the railroad company, the memoranda described and referred to by the witness Frank Hitch. It does not clearly appear from the record the exact amount of timber that these memoranda would have disclosed, but, in any event, we think they were properly excluded. If they included the same or a less quantity than defendant's books showed, they were without practical significance on the issue, for plaintiff admitted that such amount had been fully accounted for and he had deducted it from his claim. On that ground the objection should be overruled, for the burden is on the defendant to establish reversible error. But if it be assumed that the memoranda as made by Howard would show an amount greater than that as contained in defendant's statement, but less than plaintiff claimed, we think his Honor made correct ruling concerning them. It is well understood that written entries or memoranda, shown to have been made by a third person in the regular course of business, when otherwise revelant, may be admitted in evidence on the trial of an issue and as substantive testimony, but in order to their proper reception in this jurisdiction, and unless in strictness a part of the *res gestæ,* it must be made to appear that the person making them, sometimes styled the entrant, is dead at the time of trial or unavailable as a witness; that the entries were made in the line of some duty or custom pursued in the course of entrant's business; that they are contemporaneous with the act to be proved; and that the entrant had knowledge of the relevant facts which they purport to contain. *Ray v. Castle,* 79 N. C., 580; *Chaffee v U. S.,* 85 U. S., 516; *N. J. Zinc Co. v. Lehigh Zinc Co.,* 59 N. J. Law, 189; Jones on Evidence (2d. Ed.), p. 401, sec. 319 (original sec. 323); 4 Chamberlain Modern Law of Evidence, secs. 2884-85-95 *et seq.*

Applying the principles, it does not sufficiently appear at what time these memoranda were made by Howard, nor does it at all appear that he had any knowledge of the facts which alone would give his act of measurement significance, to wit, that the logs he measured were those that came off the tract of land in controversy; nor does it appear that this was otherwise established. The witness Hitch testifies that he himself had no personal knowledge of the relevant facts, but "naturally supposed" that the amount as given in and shown by his books was correct." On the record and accompanying facts, as they now appear, all that Howard's entries could possibly show was that, at some time not stated, he measured a certain lot of logs delivered by the railroad at defendant's mill and which some one had reported to him had come from a tract of land of plaintiff. Unless this was satisfactorily established, the pile of logs measured by Howard was not

a relevant fact. On the question, therefore, really in dispute between these parties, to wit, whether the amount of timber which defendant company had cut and removed from this particular tract of land of 75 acres exceeded the amount as shown on defendant's books, the memoranda would have afforded no aid to the jury, and were properly excluded. In this aspect of the matter, the case is not unlike one of the authorities just cited, of *Chaffee v. U. S.* That was an action against distillers for selling whiskey on which no tax had been paid, and which was supposed to have been shipped from their distillery along the Miami Canal in Ohio, and as evidence tending to show that the defendants had shipped whiskey in excess of the quantity they had paid taxes on, the Government offered the books of the collector of tolls in the canal and entries therein in the handwriting of deceased clerks, purporting to have been made from the reports of captains of boats as to their cargo, etc. In holding that the admission of these entries constituted reversible error, *Field, J.,* in reference to them, said: "They were not competent evidence as declarations of the collectors, for the collectors had no personal knowledge of the matters stated; they derived all their information either from the bills of lading or verbal statements of the captains; nor were the books competent evidence as declarations of the captains, because it does not appear that the bills of lading were prepared by them or that they had personal knowledge of their correctness, or that their verbal statements, when the bills of lading were not produced, were founded upon personal knowledge; and, besides, many of the certificates were admitted without calling the captains who signed them, and without proof of their death or inaccessibility."

It was objected, further, that on the facts in evidence the court refused the defendant's prayer for instruction in terms as follows: "If you find from the evidence the fact to be that the defendant prepared a statement of all the business between the defendant and the plaintiff, showing the balance of $35.75 by the defendant to the plaintiff, and offered payment of the amount of balance; that plaintiff excepted to the statement, and stated to the defendant that it was not enough; that some time afterwards the plaintiff accepted and cashed a check for the balance due, as shown in said statement; then the court instructs that the payment to and acceptance by the plaintiff was in law a settlement, and you will answer the issue as to indebtedness 'No.'"

It is the well recognized principle here and elsewhere that when a dispute exists between two parties as to the amount of an account, and one sends another a check or makes a payment clearly purporting to be in full settlement of the claim, and the other knowingly accepts

it, this will amount to an adjustment, and further action thereon is precluded. It is a question, however, of the intent of the parties, as expressed in their acts and statements at the time, and unless, on the facts in evidence, this intent is so clear that there could be no disagreement about it among men of fair minds, the issue must be decided by the jury. *Rosser v. Bynum,* 168 N. C., 342; *Aydlett v. Brown,* 153 N. C., 334; *Armstrong v. Lonon,* 149 N. C., 435; *Kerr v. Sanders,* 122 N. C., 635, etc.

In *Rosser's case, supra,* the position as it prevails in this jurisdiction is stated as follows: "It is well recognized that when, in case of a disputed account between parties, a check is given and received clearly purporting to be in full, or when such a check is given and from the facts and attendant circumstances it clearly appears that it is to be received in full of all indebtedness of a given character or all indebtedness to date, the courts will allow to such a payment the effect contended for. The position is very well stated in *Aydlett v. Brown,* 153 N. C., 334, as follows: 'That when a creditor receives and collects a check sent by his debtor on condition that it shall be in full for a disputed account, he may not thereafter repudiate the conditions annexed to the acceptance,' and is upheld and approved in numerous decisions of the Court," (citing authorities). And further: "A proper consideration of this and other cases on the subject will disclose that such a settlement is referred to the principles of accord and satisfaction, and unless the language and the effect of it is clear and explicit it is usually a question of intent, to be determined by the jury."

Under the principle so stated, the judge could not have given the instruction as prayed for, which amounts to direction that the receipt of the check, under the conditions suggested, as a matter of law, would conclude the plaintiff. The statement showing that it was a balance due did not accompany the check when sent. It was remitted a "year or so after the statement had been exhibited." There was nothing on the face of the check to show it was intended to be in full and, according to defendant's own version of the matter, it was sent in a batch or with several other checks making payments for timber, arising from transactions entirely distinct. Plaintiff denies that any such statement ever was exhibited showing the check was for a balance due and including an account for the timber in controversy; but, taking defendant's own version of it to be true, or such parts of it as appear in the prayer, the intent with which plaintiff received and cashed the check for $35.75 was a question of fact, and properly referred by his Honor to the jury.

We find no error in the record, and the judgment for plaintiff is affirmed.

No error.